IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: HAYES LEMMERZ INTERNATIONAL, INC., et al., <br><br>Debtors. | ) <br> ) Bankr. No. 09-11655 (MFW) <br> ) <br> ) |
| HAYES LEMMERZ INTERNATIONAL, INC., et al., <br><br>Appellants, <br><br>v. <br><br>GARY EMMONS and DEBORAH EMMONS, <br><br>Appellees. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. No. 11-143-SLR <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM ORDER**

At Wilmington this 9th day of April, 2012, having reviewed the order of the Bankruptcy Court issued on January 11, 2011 (D.I. 8 at HL 1-3), and the papers filed in connection with the appeal therefrom;

IT IS ORDERED that said order is reversed and the appeal granted, for the reasons that follow:

1. **Background.** On May 11, 2009, Hayes Lemmerz International, Inc. ("Hayes"), its domestic subsidiaries and one European subsidiary (collectively, "Debtors") commenced their chapter 11 cases in the United States Bankruptcy Court for the District of Delaware. Notice of the Debtors' proposed plan of reorganization and the

confirmation hearing was published on September 10, 2009 in national and regional newspapers, including in Missouri where one of the Debtors' manufacturing facilities was located. (*Id.* at HL 13-14) The confirmation hearing was held on November 3, 2009, after which the Bankruptcy Court entered an order confirming the plan. (*Id.* at HL 18) The plan became effective on December 21, 2009. (*Id.* at HL 18-564) Pursuant to the plan and the confirmation order, the Debtors filed a notice on December 21, 2009 with the Bankruptcy Court establishing January 20, 2010 as the administrative bar date. (*Id.* at HL 565)

2. It is alleged that on June 9, 2009, appellee Gary Emmons sustained severe injuries when a "multi-piece wheel" exploded at his saw mill located in Ripley County, Missouri. (*Id.* at HL 569-71) The markings on the subject multi-piece wheel component identified the manufacturers as "Firestone" and "Motor Wheel Company." (*Id.* at HL 1281) On January 22, 2010 (two days after the administrative bar date), Gary and Deborah Emmons (collectively, the "appellees") filed a personal injury suit in Missouri state court only against Bridgestone Americas, Inc. and Bridgestone Americas Tire Operations, LLC. (*Id.* at HL 1384-1407) In March 2010, the state court case was removed to federal court in Missouri. (*Id.* at HL 907) In August 2010, appellees amended their complaint to include "Hayes Lemmerz International, Inc." as an additional defendant. (*Id.* at HL 1408)

3. According to appellees, they first learned on or about July 23, 2010, that certain components of the subject multi-piece wheel were designed, manufactured and/or sold by Hayes. (*Id.* at 962-63) Although the appellees were granted leave to

add Hayes as a party to their Missouri cause of action on August 11, 2010, by letter dated August 20, 2010, counsel for Hayes notified appellees of Hayes' chapter 11 plan. (*Id.* at HL 1099-1101) On September 28, 2010, appellees filed the motions at issue, that is, a motion for relief from the plan discharge injunction and an application for allowance of late filed administrative expense claims and reservations of rights. (*Id.* at HL 569-635) After allowing limited discovery and conducting oral argument on the motions at issue (as well as on Debtors' motion to compel further discovery), the Bankruptcy Court granted appellees' motions, indicating that the appellees' lack of actual notice of the administrative bar date was "fatal" to the Debtors. (*Id.* at HL 61-62)

4. On appeal, Debtors contend that the Bankruptcy Court failed to appropriately apply the "excusable neglect" standard to the late filed claim motions, as required under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), and *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116 (3d Cir. 1999). Debtors also claim that the Bankruptcy Court erred by shifting to Hayes the burden to prove that appellees received "actual" notice of the administrative bar date, yet denied Debtors full and fair discovery related to notice and good faith.

5. **Standard of review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of

3

historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *See In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).

6. **Analysis.** The Supreme Court in *Pioneer* examined the meaning of "excusable neglect" as that term is used in Bankruptcy Rule 9006(b)(1), which empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline "was the result of excusable neglect." The Court held that the "excusable neglect"

> determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

507 U.S. at 395.[1] In reviewing the context presented, the Court "consider[ed] it significant that the notice of the bar date provided by the Bankruptcy Court . . . was

---

[1] The Third Circuit, in *In re O'Brien*, followed the *Pioneer* analysis, in that the creditor's lack of notice was only one factor the court considered in determining excusable neglect. 188 F.3d at 126-130.

4

outside the ordinary course in bankruptcy cases;" moreover, it was neither "prominently announced" nor "accompanied by an explanation of its significance." *Id.* at 398. The Court concluded:

> To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable." In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, "excusable."

*Id.* at 399. Under *Pioneer*, the burden of proof is on the late claimant to demonstrate excusable neglect by a preponderance of the evidence. *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).

7. In the case at bar, the Bankruptcy Court rested its excusable neglect determination on but two factors: the lack of actual notice by appellees of the bankruptcy proceedings and the court's conclusion that the allowance of appellees' claim did not constitute undue prejudice to the Debtors. (D.I. 8 at HL 863-64) Debtors argue that the first factor, that of notice, was contested and that they were not given the opportunity to fully explore appellees' knowledge and the reasons for their late filed claim in the context of the factor relating to good faith.

8. The Bankruptcy Court did not address all of the factors identified in *Pioneer* and *In re O'Brien,* especially Debtors' allegations of bad faith and constructive notice.[2]

---

[2]There are facts that support Debtors' argument that appellees acted in bad faith and that they had constructive notice of the bankruptcy proceedings. For instance, appellees never sued Motor Wheel Corporation in the first instance, although standard due diligence of a potential defendant in a personal injury case (as described by Debtors, D.I. 7 at 6, a single internet search) would have revealed that the Debtors acquired Motor Wheel Corporation in 1996 and that HLI Operating Company, Inc., the

5

Indeed, the Court essentially deemed such factors irrelevant by denying Debtors' discovery relating to such (as expressed by appellees' counsel, *id.* at HL 861-62). Given the Supreme Court's analysis in *Pioneer* and its emphasis on the good faith of the party claiming excusable neglect, the January 11, 2011 order of the Bankruptcy Court is reversed and remanded for further proceedings consistent with this decision.

                                                    _____
                                                    United States District Judge

---

successor to Motor Wheel, was a debtor in these chapter 11 cases. With allegations of bad faith, the Supreme Court's analysis in *Pioneer* would have warranted at least some limited discovery of the issues of constructive notice and appellees' conduct in the bankruptcy proceedings.